UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ESTATE OF BRIENNA ROSE ANTONIO, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  Case No. 5:11-cv-41 |
| MARK R. PEDERSEN, d/b/a HIGH COUNTRY TOURS, and MOUNT SNOW, LTD. | ) ) ) ) |
| Defendants/Third-Party Plaintiffs, | ) ) ) |
| v. | ) ) |
| ANDREA MITCHELL | ) ) |
| Third-Party Defendant. | ) |

**OPINION AND ORDER DENYING THIRD-PARTY DEFENDANT
ANDREA MITCHELL'S MOTION TO DISMISS THIRD-PARTY COMPLAINTS**
(Doc. 23)

This matter came before the court on September 6, 2011 for oral argument on Third-Party Defendant Andrea Mitchell's motion to dismiss the Third-Party Complaints of Mark R. Pedersen, d/b/a High Country Tours ("HCT"), and Mount Snow, Ltd. ("Mount Snow") (collectively, "Third-Party Plaintiffs") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 23.)

In their Third-Party Complaints, Third-Party Plaintiffs seek to enforce a contractual provision wherein Ms. Mitchell allegedly agreed to indemnify, defend, and hold harmless Third-Party Plaintiffs from any damages, costs, and expenses arising out of her activities on a snowmobile tour which Mr. Pedersen and HCT operated. In the alternative, they allege that Ms. Mitchell is obligated to indemnify them based on implied

indemnification. In response, Ms. Mitchell seeks dismissal, arguing that the indemnification agreement is unenforceable because it is not unmistakably clear and conspicuous, because Third-Party Plaintiffs imposed the indemnification provision upon her, and because implied indemnification cannot be applied in the circumstances of this case.

The Estate of Brienna Rose Antonio ("the Estate") is represented by Michael J. Harris, Esq. Mr. Pedersen and HCT are represented by Richard J. Windish, Esq. Mount Snow is represented by Thomas P. Aicher, Esq. Ms. Mitchell is represented by John J. Zawistoski, Esq.

For the reasons set forth below, the court DENIES Ms. Mitchell's motion to dismiss the Third-Party Complaints.

I.  **Factual and Procedural Background.**

   A. **The Complaint.**

On February 2, 2011, the Estate filed a Complaint alleging Mr. Pedersen, HCT, and Mount Snow negligently caused the death of the Estate's minor decedent, Brienna Rose Antonio, while she was riding as a passenger on a snowmobile operated by Ms. Mitchell. The Estate seeks damages from Mr. Pedersen, HCT, and Mount Snow under theories of negligence and negligent entrustment, and alleges that they are jointly and severally liable.

   B. **The Third-Party Complaints.**

Third-Party Plaintiffs allege that Ms. Mitchell participated in a HCT snowmobile tour on February 20, 2010. Before embarking on the tour, Ms. Mitchell signed a document titled "High Country Snowmobile Tours EXPRESS ASSUMPTION OF RISKS AND FORUM SELECTION AGREEMENT" ("the HCT Agreement"). The HCT Agreement purports to require Ms. Mitchell to indemnify Third-Party Plaintiffs in the event that anyone makes a claim against them as a result of her activities on the tour. The paragraph containing the indemnification clause states:

> Therefore, in consideration of being allowed to participate in these tours I agree that I will not make any claim nor bring any suit for damages, injury

> or death to myself, which results from any such inherent risks, as agreed they are defined herein. I also agree, that in the event that anyone makes a claim against High Country, Mount Snow Ltd., their owners, affiliates, sponsors, officers, directors, shareholders, agents, and/or employees (High Country and Mount Snow) as a result of my activities surrounding these tours, that I will indemnify and hold harmless High Country and Mount Snow from such claims.

(Doc. 15-1.) This language is included in the third paragraph[1] of the HCT Agreement. The HCT Agreement consists of a one page, single-sided, 8.5 x 14 inch document with eleven-point font.

## II.   Standard of Review.

When reviewing a complaint under Rule 12(b)(6), a court assumes "all well-pleaded nonconclusory factual allegations in the complaint to be true," *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), and determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The court also draws "all reasonable inferences in plaintiffs' favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the

---

[1] The first two paragraphs of the HCT Agreement describe the inherent risks of snowmobiling, including changing weather conditions, changing terrain and snow conditions, and the potential for collisions with natural and manmade objects. By signing the document, Ms. Mitchell acknowledged that she "freely and expressly" assumed the risks of injury, death, or property damage. The fourth paragraph, which is in bold font, is a choice of law and forum selection provision. The fifth paragraph states that the HCT Agreement "may be plead as an affirmative defense to any claim that [Ms. Mitchell] might make" against Third-Party Plaintiffs for damages relating to the snowmobiling tour. It also contains a provision requiring Ms. Mitchell to indemnify and hold harmless Third-Party Plaintiffs against any claims brought on behalf of a minor, if she signed the contract on behalf of one. Ms. Mitchell agreed in the final three paragraphs that she had been informed of all regulations and safety precautions and agreed to follow them, that she would wear all protective apparel, and that she would not operate the snowmobile while under the influence of drugs or alcohol.

complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). Here, Third-Party Plaintiffs attached the HCT Agreement to the Third-Party Complaints, and it is incorporated by reference. Accordingly, the HCT Agreement is properly before the court on this motion to dismiss.

### III.  Analysis and Conclusions of Law.

The court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) and is thus required to apply Vermont law to the substantive issues. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Woodstock Resort Corp. v. Scottsdale Ins. Co.*, 927 F. Supp. 149, 153 (D. Vt. 1996).

Vermont law recognizes a cause of action for indemnification where "(a) there is an express agreement or undertaking by one to indemnify the other, or (b) the circumstances are such that the law will imply such an undertaking." *Bardwell Motor Inn, Inc. v. Accavallo*, 135 Vt. 571, 572, 381 A.2d 1061, 1062 (1977); *see also Morris v. Am. Motors Corp.*, 142 Vt. 566, 576, 459 A.2d 968, 974 (1982) (permitting indemnity where one party is compelled by legal obligation to pay damages occasioned by the other's negligence).

#### A. Express Indemnification.

Ms. Mitchell argues that the court should dismiss Third-Party Plaintiffs' cause of action for express indemnification. Her first argument in favor of dismissal is that the indemnification clause is unenforceable because it is inconspicuous in the HCT Agreement. The crux of Ms. Mitchell's argument is that the indemnification clause is hidden in the middle of a paragraph without any special font, capitalization, or heading to signal its existence. In contradistinction, paragraph four, which contains the forum selection clause, is in bold font. Ms. Mitchell further points out that the HCT Agreement's title, which is underlined and in capital letters, does not contain a conspicuous warning that the document contains an indemnification provision. Ms. Mitchell urges the court to look to 9A V.S.A. § 1-201(10) of the Uniform Commercial Code ("UCC") in deciding whether the indemnification clause is conspicuous.

Third-Party Plaintiffs counter that the indemnification provision is clear and conspicuous as set forth in the HCT Agreement. They argue that the indemnification provision does not compete with other less important information, and the minimal bold or underlined language contained in the one page HCT Agreement does not detract from its operative language. Third-Party Plaintiffs further counter that the UCC is inapplicable in this case.

Pursuant to the UCC, "[w]hether a term is 'conspicuous' or not is a decision for the court." *Id.* A conspicuous term is defined as:

> written, displayed, or presented [so] that a reasonable person against which it is to operate ought to have noticed it. . . . Conspicuous terms include the following:
>
>> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>>
>> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

*Id.* "The UCC governs contracts for the sale of goods," however, and accordingly it is not binding on the court in this case. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 747 (2d Cir. 1998).

Here, the HCT Agreement is a one page, single-sided, eight paragraph document. *See Am. Int'l Specialty Lines Ins. Co. v. Kindercare Learning Ctrs., Inc.*, 365 F. App'x 64, 66 (9th Cir. 2010) (concluding indemnity provision was not conspicuous where it was "printed in 8-point, black type on page six of an eleven page agreement."). The indemnification clause is written in eleven-point font, which is the same font size as the entire HCT Agreement. *Compare Belin v. Litton Loan Servicing, L.P.*, 2006 WL 2061340, at *1 (M.D. Fla. July 17, 2006) (concluding waiver provision on page eleven of twelve page document was conspicuous in part because "it [was] in the same size font as the rest of the document"); *with Alcan Aluminum Corp. v. BASF Corp.*, 133 F. Supp. 2d

482, 497 (N.D. Tex. 2001) (disclaimer which was printed at bottom of page in substantially smaller font than majority of document and did not use different font or color was not conspicuous). In addition, a reader is likely to see the indemnification provision prior to affixing his or her signature to the document because it is located above the signature block. *See Universal Underwriters Ins. Co. v. Allstates Air Cargo, Inc.*, 2003 VT 8, ¶ 10, 175 Vt. 475, 478, 820 A.2d 988, 993 (mem.) (concluding indemnity provision was inconspicuous where it was located on the reverse side from the signature block).

On the other hand, the indemnification provision is not distinguished from other text by a heading, underline, or bold print. *See id.* (noting the indemnification provision was "in small print, in the middle of a subparagraph, without a heading or any textual features such as capital letters or bold print highlighting the limitation."). Although the title of the HCT Agreement and the forum selection clause are highlighted by differentiated text, the indemnification provision is not.

On balance, although a close question, the court concludes that the indemnification provision is sufficiently conspicuous because the document itself is short, the font size is legible, and the HCT Agreement is logically organized so that the reader is advised of the dangers of snowmobiling before the issue of indemnification is addressed. *See* Black's Law Dictionary 351 (9th ed. 2009) (defining "conspicuous" as "clearly visible or obvious. Whether a printed clause is conspicuous as a matter of law usually depends on the size and style of the typeface."). Ms. Mitchell has thus failed to demonstrate that she is entitled to dismissal, as a matter of law, based upon the inconspicuousness of the indemnification provision.

Next, Ms. Mitchell argues that the circumstances surrounding the contract's execution render it unenforceable. She asserts that Third-Party Plaintiffs "imposed" the indemnification provision on her, and she lacked bargaining power vis-à-vis the Third-Party Plaintiffs.[2] Third-Party Plaintiffs contest this argument because the parties have not

---

[2] Ms. Mitchell does not explain how the court may consider these arguments on a motion to dismiss without factual findings based upon a presentation of evidence. *See Pena v. DePrisco*,

conducted discovery, and therefore they do not have pertinent facts such as Ms. Mitchell's education and business experience.

Vermont courts interpret express indemnification provisions "as [they] do all contracts; [the] goal is to give effect to the intent of the parties as it is expressed in their writing." *Southwick v. City of Rutland*, 2011 VT 53, ¶ 4, 2011 WL 1902132, at *2 (citing *Hamelin v. Simpson Paper (Vt.) Co.*, 167 Vt. 17, 19, 702 A.2d 86, 88 (1997)). Whether a contract's language is ambiguous is a question of law, *Downtown Barre Dev. v. C & S Wholesale Grocers, Inc.*, 2004 VT 47, ¶ 8, 177 Vt. 70, 74, 857 A.2d 263, 266, as is the interpretation of an unambiguous contract. *Morrisseau v. Fayette*, 164 Vt. 358, 366, 670 A.2d 820, 826 (1995). However, where a party challenges a contract based upon the circumstances in which it was executed, a court must examine the facts:

> In determining whether a party has acted with free will or was subject to duress or coercion in executing a contract, a court should take into consideration all of the circumstances surrounding the transaction, including, for example, the age, gender, educational level, mental, physical, and emotional health and business acumen and sophistication of the complaining party, as well as any prior dealings or other relationships, whether of affinity or of consanguinity, that may exist between the parties.

28 RICHARD A. LORD, WILLISTON ON CONTRACTS § 71:11 (4th ed. 2011); *see also* AM. JUR. 2D *Contracts* § 219 (stating "whether duress exists in a particular transaction is usually a matter of fact"); *Val Preda Leasing, Inc. v. Rodriguez*, 149 Vt. 129, 135, 540 A.2d 648, 652 (1987) (examining "a number of factors" when "analyzing the unconscionability of contracts, including unequal bargaining power between the parties, lack of opportunity to read the contract, use of fine print in the contract and the terms of the contract, including substantive unfairness.").

Similarly, the question of whether a party is unfairly surprised by a contract provision requires the court to consider the factual circumstances surrounding the contract's execution. The court may consider a "party's relative business experience and education, the party's opportunity to understand the terms of the contract, and whether

---

432 F.3d 98, 112 (2d Cir. 2005) (declining to make a factual determination on a Rule 12(b)(6) motion to dismiss).

the terms were hidden in the fine print." *KPC Corp. v. Book Press, Inc.*, 161 Vt. 145, 151, 636 A.2d 325, 328 (1993); *Lamoille Grain Co.*, 135 Vt. at 9, 369 A.2d at 1391 (reversing judgment because plaintiff's business experience precluded finding of unfair surprise).

In this case, the court lacks a factual record from which it can determine whether the circumstances surrounding the HCT Agreement's execution unfairly surprised Ms. Mitchell or otherwise rendered the indemnification provision unenforceable. Ms. Mitchell has thus not demonstrated that she is entitled to dismissal as a matter of law based upon the circumstances of the HCT Agreement's execution.

### B. Implied Indemnity.

Ms. Mitchell further argues that Third-Party Plaintiffs' claim for implied indemnity fails as a matter of law. In support of this argument, she asserts that the Estate does not allege that she was negligent in the Amended Complaint, but instead bases its claims solely on Third-Party Plaintiffs' negligence. In the Amended Complaint, however, the Estate alleges that Ms. Mitchell "lost control of the snowmobile, and/or operated the snowmobile in such manner[] to cause the snowmobile to strike a rock, and causing the Estate's Decedent to collide with a tree." (Doc. 18 at 5.) Thus, the Estate clearly alleges Ms. Mitchell's active negligence in the Amended Complaint, although it does not seek damages from her.[3]

Ms. Mitchell argues that the court should nonetheless dismiss the implied indemnification claim because the circumstances in this case do not warrant its application as a matter of law. In general, "indemnity should be imputed 'only when equitable considerations concerning the nature of the parties' obligations to one another or the significant difference in the kind or quality of their conduct demonstrate that it is fair to shift the entire loss occasioned by the injury from one party to another.'" *Knisely v. Cent. Vt. Hosp.*, 171 Vt. 644, 646, 769 A.2d 5, 8 (2000) (citing W. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 51, at 344 (5th ed.1984)). The court must examine the "totality of the circumstances" when determining whether a plaintiff is

---

[3] The Estate has filed a separate suit against Ms. Mitchell in state court.

entitled to equitable relief, including the nature of fault at issue, and not solely whether the party seeking indemnification is more at fault than the party from whom it is sought. *Savage v. Walker*, 2009 VT 8, ¶ 9, 185 Vt. 603, 606, 969 A.2d 121, 125. The analysis of whether implied indemnity should be ordered thus depends upon an evaluation of competing factors generally inappropriate on a motion to dismiss. *See Corbeil v. Blood*, 2011 WL 2270403, at *5 (D. Vt. June 6, 2011); *see also Peters v. Mindell*, 159 Vt. 424, 429-30, 620 A.2d 1268, 1271-72 (1992) (holding trial court erred in granting summary judgment because questions of fact remained regarding whether third-party plaintiffs were entitled to indemnification from third-party defendants).

Moreover, in undertaking the multifaceted inquiry required to determine whether implied indemnification is available, the court is mindful that "[t]he mere allegations of the underlying complaint are not evidence of how [the injury-causing event] happened." *Chapman v. Sparta*, 167 Vt. 157, 160, 702 A.2d 132, 134 (1997). Because there is no evidence before the court from which it could evaluate the "totality of the circumstances" and competing factors to determine whether Third-Party Plaintiffs are entitled to implied indemnification, Ms. Mitchell's motion to dismiss Third-Party Plaintiffs' claim as a matter of law must be DENIED.

## CONCLUSION

For the reasons stated above, the court DENIES Ms. Mitchell's Motion to Dismiss Third-Party Complaints (Doc. 23).

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 10th day of November, 2011.

Christina Reiss, Chief Judge
United States District Court